William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
501 Fifth Ave., 15th Floor
New York, New York 10017
(Phone) (212) 286-1425; (Fax)(646) 688-3078

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
NAPOLEAN TEWOLDE, LORRAINE DORNICK,            :
ADAMA SAYE WILSON, EDWIN J. ADRADE,            :
AMINE OUACHER, Individually and on Behalf of All   :   ECF
Other Persons Similarly Situated,                          :   17 Civ. _____
                                                                       :
                                      Plaintiffs,            :
                                                                       :   **COMPLAINT AND**
          -against-                                           :   **JURY DEMAND**
                                                                       :
FLAVOR BOUTIQUE 796 INC., FLAVOR BOUTIQUE   :
522 INC., 392 CPW LLC, MICHAEL FRIEDLANDER,   :
and JOHN DOES #1-10,                                      :
                                                                       :
                                      Defendants.         :
------------------------------------------------------------------------X

          Plaintiffs NAPOLEAN TEWOLDE, LORRAINE DORNICK, ADAMA SAYE

WILSON, EDWIN J. ADRADE, and AMINE OUACHER ("Plaintiffs"), on behalf of

themselves individually and as class representatives of other employees similarly situated, by

and through their attorney, complain and allege for their complaint against FLAVOR

BOUTIQUE 796 INC., FLAVOR BOUTIQUE 522 INC., 392 CPW LLC, MICHAEL

FRIEDLANDER, and JOHN DOES #1-10 ("Defendants") as follows:.

## NATURE OF THE ACTION

          1.       Plaintiffs NAPOLEAN TEWOLDE, LORRAINE DORNICK, ADAMA SAYE

WILSON, EDWIN J. ADRADE, and AMINE OUACHER  were counter worker employees at

an ice cream store who like similar employees were illegally not paid for all their hours worked

and not paid time and one half for their hours worked over forty in a week ("overtime") and were

not paid for the tips that they earned.  See §196-d and *Samiento v. World Yacht, Inc.*, 10 N.Y.3d 70 (2008) (requiring employees to be paid all tips paid to employer).

2.       Plaintiffs allege on behalf of themselves and other similarly situated current and former employees of the Defendants who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216(b), that they are: (i) entitled to unpaid minimum wages and to unpaid overtime wages from Defendants for overtime work for which they did not receive overtime premium pay, as required by law, and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. §§201 *et seq.*

3.       Plaintiffs further complain on behalf of themselves, and a class of other similarly situated current and former employees of the Defendant, pursuant to Fed. R. Civ. P. 23, that they are entitled to back wages from Defendant for (a) hours worked for which they did not receive wages, and (b) hours worked for which they were not paid minimum wages, (c) overtime hours worked for which they did not receive time and one half their actual wages, and (d) tips paid to Defendants for services performed by Plaintiffs, as required by the New York Labor Law §§ 650 *et seq.* and the supporting New York State Department of Labor regulations.

## JURISDICTION AND VENUE

4.       This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.       Venue is proper in this district pursuant to 28 U.S.C. §1391.

6.       This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

7.      Plaintiff NAPOLEAN TEWOLDE  is an adult individual, residing in Bronx County in New York State.

8.      Plaintiff LORRAINE DORNICK  is an adult individual, residing in Kings County in New York State.

9.      Plaintiff ADAMA SAYE WILSON  is an adult individual, residing in New York County in New York State.

10.      Plaintiff EDWIN J. ADRADE is an adult individual, residing in Richmond County in New York State.

11.      Plaintiff AMINE OUACHER  is an adult individual, residing in Kings County in New York State.

12.      Upon information and belief, Defendant MICHAEL FRIEDLANDER is an adult individual, residing in New York County in New York State.

13.      Upon information and belief, Defendants FLAVOR BOUTIQUE 796 INC., FLAVOR BOUTIQUE 522 INC., and 392 CPW LLC, (together the "Corporate Defendant") are each  a New York corporation or New York Limited liability company, with a principal place of business in New York County, New York State.

14.      Upon information and belief, Defendants MICHAEL FRIEDLANDER and JOHN DOES #1-10  ("Individual Defendants") are each an officer, director and/or managing agent of the Corporate Defendant, whose address is unknown at this time and who participated in the day-to-day operations of the Corporate Defendant and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, as well as the New York Labor Law Sec. 2 and the regulations thereunder and

3

is jointly and severally liable with the Corporate Defendant.

15.     Upon information and belief, during the prior 3 years, the Individual Defendants had authority over the Corporate Defendant's management, supervision, and oversight of the Corporate Defendant's affairs in general and exercised operational control over the Corporate Defendants' employees and their decisions directly affected the nature and condition of such employees' employment.

16.     Upon information and belief, during the prior 3 years, the Individual Defendants each (1) had the power to hire and fire employees of the Corporate Defendant, (2) supervised and controlled the employees' schedules and conditions of employment, (3) determined the rate and method of payment of the employees, and (4) maintained employment records related to the employees.

## COLLECTIVE ACTION ALLEGATIONS

17.     Pursuant to 29 U.S.C. §207, Plaintiffs seek to prosecute their FLSA claims as a collective action on behalf of all persons who are or were formerly employed by Defendant at any time since April 13, 2011 (time tolled by failure to post notice) to the entry of judgment in this case (the "Collective Action Period"), who were non-exempt employees within the meaning of the FLSA and who were not paid minimum wages and/or overtime compensation at rates not less than one and one-half times the regular rate of pay for hours worked in excess of forty hours per workweek (the "Collective Action Members").

18.     Upon information and belief, Defendants did not post a notice indicating that the warehouse employees had a right to minimum wages and/or overtime wages.

19.     This collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which

4

the calculation of that number are presently within the sole control of the Defendant, upon information and belief, there are at least 40 members of the Class during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

20.     Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the fields of employment law and class action litigation.  Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

21.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them.  There will be no difficulty in the management of this action as a collective action.

22.     Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendant has acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiffs and other Collective Action Members are

    a.     whether the Defendants employed the Collective Action members within the meaning of the FLSA;

    b.     whether the Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Collective Action Members;

    c.     what proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

d.      whether Defendants failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided by the FLSA in any area where Plaintiffs are employed, in violation of 29 C.F.R. § 516.4;

e.      whether Defendants failed to pay the Collective Action Members minimum wages and overtime compensation for hours worked in excess of forty hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

f.      whether Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA;

g.      whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees; and

h.      whether Defendants should be enjoined from such violations of the FLSA in the future.

23.      Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

## CLASS ALLEGATIONS

24.      Plaintiffs sue on their own behalf and on behalf of a class of persons under Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

25.      Plaintiffs bring their New York Labor Law claim on behalf of all persons who were employed by Defendant at any time since April 11, 2011 to the entry of judgment in this case (the "Class Period"), who were not paid all their straight time wages, minimum wages, and/or overtime wages and/or were not provided proper notices required by the Wage Theft Prevention Act (the "Class") and/or were not paid the tips that they earned.

26.      The persons in the Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there at least 40 members of Class during the Class

Period.

27.     The claims of Plaintiffs are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

28.     The Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

29.     Plaintiffs are committed to pursuing his action and have retained competent counsel experienced in employment law and class action litigation.

30.     Plaintiffs have the same interests in this matter as all other members of the class and Plaintiffs' claims are typical of the Class.

31.     There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

a.      whether the Defendants employed the members of the Class within the meaning of the New York Labor Law;

b.      whether the Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and members of the Class;

c.      what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

d.      whether Defendants failed and/or refused to pay the members of the Class for all hours worked by them as well as premium pay for hours worked in excess of forty hours per workweek within the meaning of the New York Labor Law;

e.      whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, interest, costs and disbursements and attorneys' fees;

f.      whether the Defendants should be enjoined from such violations of the New York Labor Law in the future; and

g.      whether Defendants failed to pay employees tips that they earned.

## STATEMENT OF FACTS

**NAPOLEAN TEWOLDE**

32.     Napolean Tewolde ("NAPOLEAN") was employed by Flavor Boutique 796 Inc., Flavor Boutique 522 Inc.,  and Michael Friedlander (together "Defendant") as a counter person who prepared and sold ice cream products and hand delivered ice cream products ("Counter Worker") from about May 4, 2015 to January 29, 2017 (the "Napolean time period").

33.     Defendant operated and operates a fast food ice cream store named "Holey Cream" located at 796 Ninth Avenue, New York, N.Y. 10019 (the "Ice Cream Store").

34.     During the Napolean time period, Defendant employed at any given time at least 5 Counter Workers and ran a business selling fast food ice cream products.

35.     During the Napolean time period, Napolean worked with at least 40 similar Counter Worker employees as turnover was very high.

36.     During the time Napolean period, Napolean worked for Defendant as a Counter Worker at the Ice Cream Store and prepared and sold ice cream products and hand delivered ice cream products.

37.     During the Napolean time period, Napolean was not paid all his regular, minimum and overtime wages for his hours worked because he (a) was not paid for his time working and/or on call during the alleged one half hour break per shift, and (c) was not paid any wages

for his time working more than 40 hours per week.

38.     During the Napolean time period, in certain weeks, Napolean worked more than 40 hours per week ("overtime') and generally was not paid time and one half his regular wage rate for his hours worked over forty in a workweek.

39.     During the Napolean time period, Napolean first signed in and out of his job using a sign-in/sign-out sheet at the Ice Cream Store and then after about a year he signed in and out of his job by typing his identification number into a time record application on an Ipad located at the Ice Cream Store.

40.     During the Napolean time period, Napolean exclusively worked for Defendant.

41.     During the Napolean time period, the customers were provided the opportunity to tip Napolean and the other Counter Workers by putting tips in a plastic cup labeled tips which was on the counter and most customers did leave a tip in the plastic cup.  The customers also tipped the Counter Workers by paying tips on their credit card payments and also by paying tips through services, such as Grubhub, through which they ordered products for delivery.

42.     During the Napolean time period, Napolean and the other similar Counter Worker employees were not paid by Defendants for all the tips that they earned and at times were not paid in a timely manner for some of the tips that they earned.

43.     During the Napolean time period, Michael Friedlander was the operations manager and owner of Defendant.

44.     Michael Friedlander hired Napolean as a Counter Worker for Defendant and agreed to pay Napolean $13.00 per hour plus tips.

45.     During the Napolean time period, Michael Friedlander did not pay Napolean or the similar Counter Worker employees the tips that they earned and did not pay them for all the

hours that they worked, including the half hour break per shift during which they were actually working or on call.

46.     Napolean repeatedly complained to Michael Friedlander about not being paid for his tips and not being paid for his overtime at time and one half his regular hourly rate and not being paid for all his hours worked, including his time working and on call during the alleged breaks that he and the other Counter Workers never received.

47.     Michael Friedlander repeatedly said that he would investigate Napolean's complaints and talk with his accountants, but never got back to Napolean and never paid Napolean the wages and tips that Napolean and the other Counter Worker employees were owed.

48.     During the Napolean time period, Napolean was generally not paid (a) for all his hours worked; (b) time and one half his regular hourly rate for hours worked over forty in a workweek ("overtime"); (c) an extra hour of pay for days on which I worked a spread of ten or more hours, and (d) all the tips that were paid for his services.

49.     During the Napolean time period, Defendant did not pay Napolean for a 1/2 hour alleged meal break per shift even though Defendant knew that Napolean was on call during break periods and often required Napolean to work during break periods, if the store was busy.

50.     During the Napolean time period, Napolean was generally required to work through scheduled breaks.  Nevertheless, Defendant deducted one half hour per shift from Napolean's hours worked for an alleged break and never paid Napolean any wages for this one half hour during which Napolean was working and/or on call.

51.     On certain days, Napolean worked a spread of more than ten hours.

52.     Duringthe later part of the time Napolean period, Napolean and the other Counter Worker employees scanned in and out of their jobs using an electronic scanner and their

identification cards.

53.     During the Napolean time period, Napolean was not paid minimum wages and overtime wages and was not paid an extra hour of pay for work performed at least ten hours apart in a day.

54.     During the Napolean time period, Napolean's job responsibilities did not require any independent judgment, and Napolean did not have the power to hire or fire employees.

55.     During the Napolean time period, there were at least 40 other Counter Worker employees who did similar work as Napolean and also had no power to hire or fire employees.

56.     During the Napolean time period, Napolean and these similar Counter Worker employees of Defendant during certain weeks worked more than 40 hours a week for Defendant, but were not paid time and one half for their hours worked over forty in a week.

57.     During the Napolean time period, Napolean and these other similar Counter Worker employees were not paid wages for all their hours worked, were not paid minimum wages for all their hours worked, were not paid for their time on call or working during alleged meal breaks, were not paid for all their hours worked, and were not paid for all their tips earned.

58.     During the Napolean time period, Napolean and these other similar Counter Worker employees worked more than 40 hours a week, but were not paid time and one half for their wages over forty in a workweek and were not paid spread of hours pay for hours worked at least ten hours apart and were not paid the tips that customers paid Defendants for their services.

59.     Throughout the Napolean time period, Defendant has likewise employed other individuals, like Napolean, in positions as Counter Workers.

60.     During the Napolean time period, Napolean and similar courier employees were not specifically notified by Defendants of the regular pay day designated by Defendant,

Defendant's name, address and principal place of business and telephone number and their specific rate of pay as required by the New York Wage Theft Prevention Act.  Napolean has not been given any specific notice of this information to sign and has not signed any such notice.

61.     Throughout the Napolean time period, such individuals have not been paid minimum wages for all hours worked, have worked in excess of 40 hours per week and not been paid overtime premium wages of one and one half times their regular hourly rate, and have worked a spread of ten hours and have not been paid an extra hour of pay for days on which they worked a spread of at least ten hours and have not been paid for all the tips that they earned.

**LORRAINE DORNICK**

62.     Plaintiff LORRAINE DORNICK ("Lorraine") is and was employed by Flavor Boutique 796 Inc., Flavor Boutique 522 Inc., 392 CPW LLC and Michael Friedlander (together "Defendant") as a full time counter worker ("Counter Worker") from about August 23, 2015 to February 6, 2017 (the "Lorraine time period").  Since February 6, 2017, Lorraine has worked for Defendant as a Counter Worker for four days a week.  Lorraine's primary jobs as a Counter Worker are and were to prepare and sell ice cream products and hand deliver ice cream products and operate the cash register and clean and stock the store.

63.     Defendant operated and operates a fast food ice cream store named "Holey Cream" located at 796 Ninth Avenue, New York, N.Y. 10019 (the "Ice Cream Store").

64.     During the Lorraine time period, Defendant employed at any given time at least 5 Counter Workers and ran a business selling fast food ice cream products.

65.     During the Lorraine time period, Lorraine worked with at least 50 similar Counter Worker employees as turnover was very high.

66.     During the Lorraine time period, Lorraine worked for Defendant as a Counter

Worker at the Ice Cream Store and prepared and sold ice cream products and hand delivered ice cream products.

67.     During the Lorraine time period, Lorraine was not paid all her regular, minimum and overtime wages for her hours worked because she (a) was not paid for her time working and/or on call during the alleged one half hour break per shift, and (c) was not paid time and one half her regular wage rate for her time working more than 40 hours per week.

68.     During the Lorraine time period, in certain weeks, Lorraine worked more than 40 hours per week ("overtime') and generally was not paid time and one half her regular wage rate for her hours worked over forty in a workweek.

69.     During the Lorraine time period, Lorraine signed in and out of her job by typing her identification number into a time record application on an Ipad located at the Ice Cream Store.  The time record on the application was manipulated by Defendants to show less hours than Lorraine and others actually worked.  Lorraine often clocked in at 6:00 p.m. and  when she clocked out she noticed that Defendants had changed her clock in to 6:30 p.m. or 7:00 p.m. to reduce her hours.

70.     During the Lorraine time period, Lorraine exclusively worked for Defendant.

71.     During the Lorraine time period, the customers were provided the opportunity to tip Lorraine and the other Counter Workers by putting tips in a plastic cup labeled tips which was on the counter and most customers did leave a tip in the plastic cup.  The customers also tipped the Counter Workers by paying tips on their credit card payments and also by paying tips through services, such as Grubhub and Seamless, through which they ordered products for delivery.

72.     During the Lorraine time period, Lorraine and the other similar Counter Worker

13

employees were not paid by Defendants for the tips that they earned.

73.     During the Lorraine time period, Michael Friedlander was the operations manager and owner of Defendant.

74.     Michael Friedlander hired Lorraine as a Counter Worker for Defendant and agreed to pay her $9.00 per hour plus tips.

75.     Michael Friedlander did not pay Lorraine or the similar Counter Worker employees the tips that we earned and did not pay us for all the hours that we worked, including the half hour break per shift during which we were actually working or on call.

76.     Lorraine repeatedly complained to Michael Friedlander about not being paid for her tips and not being paid for her overtime at time and one half and not being paid for all her hours worked, including her time working and on call during the alleged breaks that she and the other Counter Workers never received.

77.     Michael Friedlander repeatedly said that he would investigate Lorraine's complaints, but never got back to Lorraine  and never paid Lorraine or the similar Counter Workers the wages and tips Lorraine and the other Counter Worker employees were owed.

78.     During the Lorraine time period, Lorraine was generally not paid (a) for all her hours worked; (b) time and one half her regular hourly rate for hours worked over forty in a workweek ("overtime"); (c) an extra hour of pay for days on which Lorraine worked a spread of ten or more hours, and (d) all the tips that were paid for Lorraine's services.

79.     Defendant did not pay Lorraine for a 1/2 hour alleged meal break per shift even though Defendant knew that Lorraine was on call during break periods and often required her to work during break periods, if the store was busy.

80.     During the Lorraine time period, Lorraine was generally required to work through

scheduled breaks.  Nevertheless, Defendant deducted one half hour per shift from her hours worked for an alleged break and never paid her any wages for this one half hour during which I was working and/or on call.

81.     On certain days, Lorraine worked a spread of more than ten hours.

82.     During the Lorraine time period, Lorraine generally worked 6 days per week starting at or between 4:00 p.m. and 6:00 p.m. and working until closing which generally occurred at about 3:00 a.m. to 5:00 a.m.  Accordingly, Lorraine generally worked at a minimum 48 hours per week.

83.     During the Lorraine time period, Lorraine was not paid minimum wages and overtime wages and was not paid an extra hour of pay for work performed at least ten hours apart in a day.

84.     During the Lorraine time period, Lorraine's job responsibilities did not require any independent judgment, and Lorraine did not have the power to hire or fire employees.

85.     During the Lorraine time period, there were at least 50 other Counter Worker employees who did similar work as Lorraine and also had no power to hire or fire employees.

86.     During the Lorraine time period, Lorraine and these similar Counter Worker employees of Defendant during certain weeks worked more than 40 hours a week for Defendant, but were not paid time and one half for the hours worked over forty.

87.     During the Lorraine time period, Lorraine and these other similar Counter Worker employees were not paid wages for all their hours worked, were not paid minimum wages for all their hours worked, were not paid for their time on call or working during alleged meal breaks, were not paid for all their hours worked, and were not paid for all their tips earned.

88.     During the Lorraine time period, Lorraine and these other similar Counter Worker

employees worked more than 40 hours a week, but were not paid time and one half for their wages over forty in a workweek and were not paid spread of hours pay for hours worked at least ten hours apart and were not paid the tips that  customers paid Defendant for their services.

89.     Throughout the Lorraine time period, Defendant has likewise employed other individuals, like Lorraine, in positions as Counter Workers.

90.     During the Lorraine time period, Lorraine and similar courier employees were not specifically notified in writing by Defendant of the regular pay day designated by Defendant and their correct rate of pay as required by the New York Wage Theft Prevention Act.

91.     Throughout the Lorraine time period, such individuals have not been paid minimum wages for all hours worked, have worked in excess of 40 hours per week and not been paid overtime premium wages of one and one half times their regular hourly rate, and have worked a spread of ten hours and have not been paid an extra hour of pay for days on which they worked a spread of at least ten hours and have not been paid for all the tips that they earned.

**EDWIN ANDRADE**

92.     EDWIND ANDRADE ("Edwin")  was employed by Flavor Boutique 796 Inc., Flavor Boutique 522 Inc.,   and Michael Friedlander (together "Defendant") as a counter worker ("Counter Worker") from about August 18, 2014 to about April 5, 2015 (the "time period").

93.     Edwin's primary jobs as a Counter Worker were to prepare and sell ice cream products and hand deliver ice cream products and operate the cash register and clean and stock the store.

94.     Defendant operated and operates a fast food ice cream store named "Holey Cream" located at 796 Ninth Avenue, New York, N.Y. 10019 (the "Ice Cream Store").

95.     During the Edwin time period, Defendant employed at any given time at least 5

Counter Workers and ran a business selling fast food ice cream products.

96.     During the Edwin time period, Edwin worked with at least 50 similar Counter Worker employees as turnover was very high.

97.     During the Edwin time period, Edwin worked for Defendant as a Counter Worker at the Ice Cream Store and prepared and sold ice cream products and hand delivered ice cream products.

98.     During the Edwin time period, Edwin was not paid all his regular, minimum and overtime wages for his hours worked because (a) was not paid for his time working and/or on call during the alleged one half hour break per shift, and (c) was not paid time and one half his regular wage rate for his time working more than 40 hours per week.

99.     During the Edwin time period, in certain weeks, Edwin worked more than 40 hours per week ("overtime') and generally was not paid time and one half his regular wage rate for his hours worked over forty in a workweek.

100.    During the Edwin time period, Edwin signed in and out of his job using a sign-in/sign-out sheet at the Ice Cream Store.

101.    During the Edwin time period, Edwin exclusively worked for Defendant.

102.    During the Edwin time period, the customers were provided the opportunity to tip Edwin and the other Counter Workers by putting tips in a plastic cup labeled tips which was on the counter, and most customers did leave a tip in the plastic cup.

103.    During the Edwin time period, the customers also tipped the Counter Workers by paying tips on their credit card payments and also by paying tips through services, such as Grubhub and Seamless, through which they ordered products for delivery.

104.    During the Edwin time period, Edwin and the other similar Counter Worker

employees were not paid by Defendants for the tips that they earned.

105.    During the Edwin time period, Michael Friedlander was the operations manager and owner of Defendant.

106.    Michael Friedlander hired Edwin as a Counter Worker for Defendant and agreed to pay him $9.00 per hour plus tips.

107.    Michael Friedlander did not pay Edwin or the similar Counter Worker employees the tips that they earned and did not pay them for all the hours that they worked, including the half hour break per shift during which they were actually working or on call.

108.    Edwin repeatedly complained to Michael Friedlander about not being paid for his tips and not being paid for his overtime at time and one half and not being paid for all his hours worked, including his time working and on call during the alleged breaks that Edwin and the other Counter Workers never received.

109.    Michael Friedlander repeatedly said that he would investigate Edwin's complaints and talk with his accountants, but never got back to Edwin and never paid Edwin and the similar Counter Workers the wages and tips that Edwin and the other Counter Worker employees were owed.

110.    During the Edwin time period, Edwin was generally not paid (a) for all his hours worked; (b) time and one half his regular hourly rate for hours worked over forty in a workweek ("overtime"); (c) an extra hour of pay for days on which he worked a spread of ten or more hours, and (d) all the tips that were paid for his services.

111.    Defendant did not pay Edwin for a 1/2 hour alleged meal break per shift even though Defendant knew that Edwin was on call during break periods and often required Edwin to work during break periods, if the store was busy.

112.     During the Edwin time period, Edwin was generally required to work through scheduled breaks.  Nevertheless, Defendant deducted one half hour per shift from his hours worked for an alleged break and never paid Edwin any wages for this one half hour during which Edwin was working and/or on call.

113.     On certain days, Edwin worked a spread of more than ten hours.

114.     During the Edwin time period, Edwin generally worked 6 days per week starting at or between 4:00 p.m. and 6:00 p.m. and working until closing which generally occurred at about 3:00 a.m. to 5:00 a.m.  Accordingly, Edwin generally worked at a minimum 54 hours per week.

115.     During the Edwin time period, Edwin was not paid minimum wages and overtime wages and was not paid an extra hour of pay for work performed at least ten hours apart in a day.

116.     During the Edwin time period, Edwin's job responsibilities did not require any independent judgment, and Edwin did not have the power to hire or fire employees.

117.     During the Edwin time period, there were at least 50 other Counter Worker employees who did similar work as Edwin and also had no power to hire or fire employees.

118.     During the Edwin time period, Edwin and these similar Counter Worker employees of Defendant during certain weeks worked more than 40 hours a week for Defendant, but were not paid time and one half for the hours worked over forty.

119.     During the Edwin time period, Edwin and these other similar Counter Worker employees were not paid wages for all their hours worked, were not paid minimum wages for all their hours worked, were not paid for their time on call or working during alleged meal breaks, were not paid for all hours worked, and were not paid for all their tips earned.

120.     During the Edwin time period, Edwin and these other similar Counter Worker

employees worked more than 40 hours a week, but were not paid time and one half for their wages over forty in a workweek and were not paid spread of hours pay for hours worked at least ten hours apart and were not paid the tips paid by customers for their services.

121.    Throughout the Edwin time period, Defendant has likewise employed other individuals, like Edwin, in positions as Counter Workers.

122.    During the Edwin time period, Edwin and similar courier employees were not specifically notified in writing by Defendants of the regular pay day designated by Defendant and their correct rate of pay as required by the New York Wage Theft Prevention Act.

123.    Throughout the Edwin time period, such individuals have not been paid minimum wages for all hours worked, have worked in excess of 40 hours per week and not been paid overtime premium wages of one and one half times their regular hourly rate, and have worked a spread of ten hours and have not been paid an extra hour of pay for days on which they worked a spread of at least ten hours and have not been paid for all the tips that they earned.

**ADAMA SAYA WILSON**

124.    ADAMA SAYA WILSON ("Adama") was employed by Flavor Boutique 796 Inc., Flavor Boutique 522 Inc., 392 CPW LLC and Michael Friedlander (together "Defendant") as a full time counter worker ("Counter Worker") from about July 13, 2014 to November 20, 2016 (the "Adama time period").  Since February 6, 2017, Adama  has worked for Defendant as a Counter Worker for four days a week.

125.    Adama's primary jobs as a Counter Worker are and were to prepare and sell ice cream products and hand deliver ice cream products and operate the cash register and clean and stock the store.

126.    Defendant operated and operates a fast food ice cream store named "Holey

Cream" located at 796 Ninth Avenue, New York, N.Y. 10019 (the "Ice Cream Store").

127.     During the Adama time period, Defendant employed at any given time at least 5 Counter Workers and ran a business selling fast food ice cream products.

128.     During the time Adama period, Adama worked with at least 50 similar Counter Worker employees as turnover was very high.

129.     During the time Adama period, Adama worked for Defendant as a Counter Worker at the Ice Cream Store and prepared and sold ice cream products and hand delivered ice cream products.

130.     During the Adama time period, Adama was not paid all her regular, minimum and overtime wages for her hours worked because she (a) was not paid for her time working and/or on call during the alleged one half hour break per shift, and (c) was not paid time and one half her regular wage rate for her time working more than 40 hours per week.

131.     During the Adama time period, in certain weeks, Adama worked more than 40 hours per week ("overtime') and generally was not paid time and one half her regular wage rate for her hours worked over forty in a workweek.

132.     During the Adama time period, Adama signed in and out of her job by typing her identification number into a time record application on an Ipad located at the Ice Cream Store. The time record on the application was manipulated by Defendant to show less hours than Adama and others actually worked.  Often when Adama clocked out she noticed that Defendant had changed her clock to reduce her hours by half an hour or more.

133.     During the Adama time period, Adama exclusively worked for Defendant.

134.     During the Adama time period, the customers were provided the opportunity to tip Adama and the other Counter Workers by putting tips in a plastic cup labeled tips which was

on the counter and most customers did leave a tip in the plastic cup.  The customers also tipped the Counter Workers by paying tips on their credit card payments and also by paying tips through services, such as Grubhub and Seamless, through which they ordered products for delivery.

135.    During the Adama time period, Adama and the other similar Counter Worker employees were not paid by Defendant for the tips that they earned.

136.    During the Adama time period, Michael Friedlander was the operations manager and owner of Defendant.

137.    Michael Friedlander hired Adma as a Counter Worker for Defendant and agreed to pay Adama $10.00 per hour plus tips.

138.    Michael Friedlander did not pay Adama or the similar Counter Worker employees the tips that they earned and did not pay them for all the hours that they worked, including the half hour break per shift during which they were actually working or on call.  Adama generally never took a break and worked through all alleged breaks which time was illegally deducted from her hours worked.

139.    Adama repeatedly complained to Michael Friedlander about not being paid for her tips and not being paid for her overtime at time and one half and not being paid for all her hours worked, including her time working and on call during the alleged breaks that Adama and the other Counter Workers never received.

140.    Michael Friedlander repeatedly said that he would investigate Adama's complaints, but never got back to Adama and never paid her the wages and tips she and the other Counter Worker employees were owed.

141.    During the Adama time period, Adama was generally not paid (a) for all her hours

worked; (b) time and one half her regular hourly rate for hours worked over forty in a workweek ("overtime"); (c) an extra hour of pay for days on which she worked a spread of ten or more hours, and (d) all the tips that were paid for her services.

142.    Defendant did not pay Adama for a 1/2 hour alleged meal break per shift even though Defendant knew that Adama was working during break periods.

143.    During the time Adama period, Adama was generally required to work through scheduled breaks.  Nevertheless, Defendant deducted one half hour per shift from her hours worked for an alleged break and never paid her any wages for this one half hour during which she was working and/or on call.

144.    On certain days, Adama worked a spread of more than ten hours.

145.    During the period from about June 1, 2014 to about August 31, 2014 (the "2014 Summer Period"), Adama generally worked 6 days per week starting at or between 3:00 p.m. and 5:00 p.m. and working until 2:00 a.m.  Accordingly, Adama generally worked at a minimum 54 hours per week during the 2014 Summer Period.

146.    During the Adama time period other than the 2014 Summer Period, Adma generally worked 4 days per week and was not paid for all her hours worked.

147.    During the Adama time period, Adama was not paid minimum wages and overtime wages and was not paid an extra hour of pay for work performed at least ten hours apart in a day.

148.    During the  Adama time period, Adama's job responsibilities did not require any independent judgment, and Adama did not have the power to hire or fire employees.

149.    During the Adama time period, there were at least 50 other Counter Worker employees who did similar work as Adama and also had no power to hire or fire employees.

150.     During the Adama time period, Adama and these similar Counter Worker employees of Defendant during certain weeks worked more than 40 hours a week for Defendant, but were not paid time and one half for their hours worked over forty in a week.

151.     During the Adama time period, Adama and these other similar Counter Worker employees were not paid wages for all their hours worked, were not paid minimum wages for all their hours worked, were not paid for their time on call or working during alleged meal breaks, were not paid for all hours worked, and were not paid for all their tips earned.

152.     During the Adama time period, Adama and these other similar Counter Worker employees worked more than 40 hours a week, but were not paid time and one half for their wages over forty in a workweek and were not paid spread of hours pay for hours worked at least ten hours apart and were paid the tips earned by them.

153.     Throughout the Adama time period, Defendant has likewise employed other individuals, like Adama, in positions as Counter Workers.

154.     During the time Adama period, Adama and similar courier employees were not specifically notified by Defendants of the regular pay day designated by Defendant, Defendant's name, address and principal place of business and telephone number and their specific rate of pay as required by the New York Wage Theft Prevention Act.  Adama has not been given any specific notice of this information to sign and has not signed any such notice.

155.     Throughout the Adama time period, such individuals have not been paid minimum wages for all hours worked, have worked in excess of 40 hours per week and not been paid overtime premium wages of one and one half times their regular hourly rate, and have worked a spread of ten hours and have not been paid an extra hour of pay for days on which they worked a spread of at least ten hours and have not been paid for all the tips that they earned.

**AMINE OUACHER**

156.    Amine Ouacher, ("Amine") was employed by Flavor Boutique 796 Inc., Flavor Boutique 522 Inc.,  and Michael Friedlander (together "Defendant") as a counter person who prepared and sold ice cream products and hand delivered ice cream products ("Counter Worker") from about January 7, 2015 to January 1, 2017 (the "time period").

157.    Amine's primary jobs as a Counter Worker are were to prepare and sell ice cream products and hand deliver ice cream products (by using his personal bicycle and by walking) and clean and stock the store.  I was never paid for his bicycle expenses.

158.    During the Amine time period, Defendant operated a fast food ice cream store named "Holey Cream" located at 796 Ninth Avenue, New York, N.Y. 10019 (the "Ice Cream Store").

159.    During the Amine time period, Defendant employed at any given time at least 9 Counter Workers and ran a business selling fast food ice cream products.

160.    During the Amine time period, Amine worked with at least 50 similar Counter Worker employees as turnover was very high.

161.    During the Amine time period, Amine worked for Defendant as a Counter Worker at the Ice Cream Store and prepared and sold ice cream products and hand delivered ice cream products.

162.    During the Amine time period, Defendants held staff meetings about once a week for about two hours which were held off the clock and for which Amine and the other Counter Worker employees were not paid.

163.    During the Amine time period, Amine was not paid all his regular, minimum and overtime wages for his hours worked because he (a) was not paid for his time working and/or on

call during the alleged one half hour break per shift, and (c) was not paid time and one half his regular wage rate for his time working more than 40 hours per week.

164.   During the Amine time period, in certain weeks, Amine worked more than 40 hours per week ("overtime") and was not paid time and one half his regular wage rate for his hours worked over forty in a workweek.

165.   During the Amine time period, Amine signed in and out of his job by typing his identification number into a time record application on an Ipad located at the Ice Cream Store. The time record on the application was manipulated by Defendants to show less hours than A mine and others actually worked.

166.   Michael Friedlander manipulated the electronic time records because when Amine timed out, Amine often saw that the records showed that he had timed in later than the actual time that he had actually timed in.

167.   During the Amine time period, Amine exclusively worked for Defendant.

168.   During the Amine time period, the customers were provided the opportunity to tip Amine and the other Counter Workers by putting tips in a plastic box labeled tips which was on the counter and was locked.  Most customers did leave a tip in the plastic box.  The customers also tipped the Counter Workers by paying tips on their credit card payments and also by paying tips through services, such as Grubhub and Seamless, through which they ordered products for delivery.

169.   If any tips were received directly by a Counter Worker employee, the Counter Worker Employee was required to put the tip in the tip box.

170.   During the Amine time period, Amine and the other similar Counter Worker employees were not paid by Defendants for the tips that they earned.

171.    During the Amine time period, Michael Friedlander was the operations manager and owner of Defendant.

172.    Michael Friedlander hired Amine as a Counter Worker for Defendant and agreed to pay Amine $10.00 per hour plus tips.

173.    Michael Friedlander and Defendants did not pay Amine or the similar Counter Worker employees the tips that they earned and did not pay them for all the hours that they worked, including the half hour break per shift during which they were actually working or on call.

174.    Amine repeatedly complained to Michael Friedlander about not being paid for his tips and not being paid for his overtime at time and one half and not being paid for all his hours worked, including his time working and on call during the alleged breaks that Amine and the other Counter Workers never received.

175.    Michael Friedlander repeatedly said that he would investigate Amine's complaints, but never got back to Amine and never paid Amine the wages and tips that Amine and the other Counter Worker employees was owed.

176.    During the Amine time period, Amine was generally not paid (a) for all his hours worked; (b) time and one half his regular hourly rate for hours worked over forty in a workweek ("overtime"); (c) an extra hour of pay for days on which he worked a spread of ten or more hours, and (d) all the tips that were paid for his services.

177.    Defendant did not pay Amine for a 1/2 hour alleged meal break per shift even though Defendant knew that Amine was on call during break periods and often required Amine to work during break periods, if the store was busy.

178.    During the Amine time period, Amine was generally required to work through

scheduled breaks.  Nevertheless, Defendant deducted one half hour per shift from his hours worked for an alleged break and never paid Amine any wages for this one half hour during which he was working and/or on call.

179.    On certain days, Amine worked a spread of more than ten hours.

180.    During the Amine time period, Amine generally worked 6 days per week starting at or between 4:00 p.m. and 6:00 p.m. and working until closing which generally occurred at about 3:00 a.m. to 5:00 a.m.  Accordingly, Amine generally worked at a minimum 48 hours per week.

181.    During the Amine time period, Amine was not paid minimum wages and overtime wages and was not paid an extra hour of pay for work performed at least ten hours apart in a day.

182.    During the Amine time period, Amine's job responsibilities did not require any independent judgment, and Amine did not have the power to hire or fire employees.

183.    During the Amine time period, there were at least 50 other Counter Worker employees who did similar work as Amine and also had no power to hire or fire employees.

184.    During the Amine time period, Amine and these similar Counter Worker employees of Defendant during certain weeks worked more than 40 hours a week for Defendant, but were not paid time and one half for the hours worked over forty.

185.    During the Amine time period, Amine and these other similar Counter Worker employees were not paid wages for all their hours worked, were not paid minimum wages for all their hours worked, were not paid for their time on call or working during alleged meal breaks, were not paid for all their hours worked, and were not paid for all their tips earned.

186.    During the Amine time period, Amine and these other similar Counter Worker

employees worked more than 40 hours a week, but were not paid time and one half for their wages over forty in a workweek and were not paid spread of hours pay for hours worked at least ten hours apart and were not paid tips earned by them for their services which were paid to Defendant.

187.    Throughout the Amine time period, Defendant has likewise employed other individuals, like me, in positions as Counter Workers.

188.    During the Amine time period, Amine and similar courier employees were not specifically notified in writing by Defendant of the regular pay day designated by Defendant and their correct rate of pay as required by the New York Wage Theft Prevention Act.

189.    Throughout the Amine time period, such individuals have not been paid minimum wages for all hours worked, have worked in excess of 40 hours per week and not been paid overtime premium wages of one and one half times their regular hourly rate, and have worked a spread of ten hours and have not been paid an extra hour of pay for days on which they worked a spread of at least ten hours and have not been paid for all the tips that we earned.

## CLAIM I
## FAIR LABOR STANDARDS ACT

190.    Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

191.    At all relevant times, Defendants have been and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

192.    At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

193.    Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

194.    Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. §216(b).  The named Plaintiffs' written consents are attached hereto and incorporated by reference.

195.    At all relevant times, the Defendants had a policy and practice of refusing to pay its employees minimum wages and/or overtime wages equal to time and one half their employees' regular wages for hours worked over forty in a work week.

196.    As a result of the Defendants' willful failure to compensate their employees, including Plaintiffs and the Collective Action members overtime wages and/or minimum wages for all of their hours worked, the Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

197.    As a result of the Defendants' failure to record, report, credit and/or compensate their employees, including Plaintiff and the Collective Action members, the Defendants have failed to make, keep and preserve records with respect to each of their employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

198.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

199.    Due to the Defendants' FLSA violations, Plaintiff and the Collective Action Class are entitled to recover from the Defendants, their unpaid minimum and overtime wages, and an equal additional amount as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, interest, reasonable attorneys' fees, and costs and disbursements of

this action, pursuant to 29 U.S.C. § 216(b).

## CLAIM II
## <u>NEW YORK LABOR LAW</u>

200.    Plaintiffs repeat and reallege each and every allegation of the preceding

paragraphs hereof with the same force and effect as though fully set forth herein.

201.    At all relevant times, Plaintiffs and the members of the Class were employed by

the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

202.    Defendants willfully violated Plaintiffs' rights, and the rights of the members of

the Class, by failing to pay them wages in violation of the New York Labor Law and its

regulations.

203.    The Defendants' New York Labor Law violations have caused Plaintiffs and the

members of the Class, irreparable harm for which there is no adequate remedy at law.

204.    Due to the Defendants' New York Labor Law violations, Plaintiffs and the

members of the Class are entitled to recover from Defendants their unpaid wages, unpaid

minimum wages, unpaid overtime wages, unpaid tips, reasonable attorneys' fees, and/or costs

and  disbursements of the action, pursuant to New York Labor Law §663(1) et seq.

205.    Upon information and belief Defendants did not provide proper notices to

Plaintiffs and similar employees of their wage rate and the name of their employer and the time

period during which they would be paid.

206.    Defendants willfully violated the rights of Plaintiffs and the members of the Class

by failing to provide them proper notices and wage statements in violation of the New York

Wage Theft Prevention Act, N.Y. Lab. Law § 198(1-a) (enacted on April 9, 2011).

207.    As a result of Defendants' violation of the New York Wage Theft Prevention Act,

Plaintiffs and the members of the Class are each entitled to damages of at least $150 per week during which the violations occurred.

## THIRD CAUSE OF ACTION
### (Breach of Contract)

208.    Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

209.    Plaintiffs and members of the Class entered into employment contracts with Defendants.

210.    Plaintiffs and members of the Class fully performed all their obligations under the employment contracts.

211.    Defendants breached the employment contracts by failing to pay wages required to be paid by the contracts to the Plaintiffs and members of the Class.

212.    Defendants' breach has caused Plaintiffs and members of the Class to suffer damages.

213.    As a result of Defendants' breach of the employment agreements Plaintiffs and members of the Class have been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (Unjust Enrichment)

214.    Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

215.    Defendants were unjustly enriched at the expense of Plaintiffs and the members of the Class.

216.    As a result of Defendants' unjust enrichment, Plaintiffs and members of the Class have been damaged in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs on behalf of themselves and all other similarly situated Collective Action members and members of the Class, respectfully request that this Court grant the following relief:

a. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(1), (2) and (3) on behalf of the members of the Class and appointing Plaintiffs and their counsel to represent the Class;

b. Designation of this action as a collective action on behalf of the Collective Action members and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and appointing Plaintiffs and their counsel to represent the Collective Action members;

c. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

d. An order tolling the statute of limitations;

e. An injunction against the Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f. An award of unpaid tips and unpaid wages, overtime wages and minimum wages

due under, among others, the FLSA, the New York Labor Law, New York Wage

Theft Prevention Act, and the New York common law;

g.   An award of liquidated and/or punitive damages, as a result of the Defendants'

willful failure to pay wages, minimum wages, and/or overtime wages pursuant to

29 U.S.C. § 216 and the New York Labor Law and the New York common law;

h.   An award of prejudgment and postjudgment interest;

i.   An award of costs and expenses of this action together with reasonable attorney's

and expert fees;

j.   Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial

by jury on all questions of fact raised by the complaint.


Dated:  New York, New York
        April 13, 2017


        LAW OFFICE OF WILLIAM COUDERT RAND


        _____
        William Coudert Rand, Esq.
        *Attorney for Plaintiffs*, Individually and on
        Behalf of All Persons Similarly Situated
        501Fifth Ave., 15th Floor
        New York, New York 10017
        Tel: (212) 286-1425
        Fax: (646) 688-3078
        Email: wcrand@wcrand.com

## CONSENT TO BECOME PARTY PLAINTIFF

*Flavor Boutique 522 Inc.*

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of _____ *and Michael Friedlander el.* _____ *Flavor Boutique 796 Inc., 392 crw LLC* to pay *et al.* me overtime wages and/or minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

*Napoleon Tewolde*    02/14/17    NAPOLEON TEWOLDE

Signature              Date    Print Name

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Michael Friedlander, 392 CPW LLC Flavor Boutique 396 Inc., Flavor Boutique 522 Inc., et al. to pay me overtime wages and/or minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.


_____  02/23/17    LORRAINE DORNICK
Signature                Date    Print Name

8

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of  Michael Friedlander, 392 CPW LLC Flavor Boutique 796 Inc., Flavor Boutique 522 Inc., et al.  to pay me overtime wages and/or minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_Asaye_     _02-23-17_     _Adama Saye Wilson_
Signature           Date    Print Name

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Michael Friedlander, 392 CPW LLC Flavor Boutique 796 Inc., Flavor Boutique 522 Inc, et el to pay me overtime wages and/or minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.


_____       02/23/17    Edwin J. Andrade
Signature                     Date    Print Name

8

CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of ~~Michael~~ ~~Sadkus~~ 392 CPW LLC Flavor Boutique 796 Inc., Flavor Boutique 522 Inc, et al. _____ to pay me overtime wages and/or minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

Signature _____   Date 02/23/2017   Print Name AMINE OUACHER

8